UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| LOUIS WILLIAMS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 2:12-cv-225-APR |
| SCHOOL TOWN OF MUNSTER, *et al.*, | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 17] filed by the defendants on January 31, 2014. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

*Background*

The plaintiff, Louis Williams, an African American, went to the Munster High School football game on October 1, 2010 to watch his son play. When he arrived, there were no seats available, so he stood near the fence in front of the bleachers with his wife and daughter. While watching the game, Williams received a telephone call. He walked away from the fence to a grassy area near the outside fence.

Williams testified that while he was on the phone, one of the defendants, Donald Stopper, grabbed and yanked his arm and yelled at him to get off the grass. Williams asked Stopper what was going on, and Stopper replied that he told Williams to get off the grass. Williams responded by explaining that he had been on the phone and had not heard anyone tell him to get off the grass. Stopper then stated that he had been yelling at Williams for five minutes to get off the

1

grass and that Williams stated "no problem." Williams continued to talk on his phone and Stopper attempted to pull him off the grass.

Williams turned around and saw the defendant, Lyon Alb, standing on the sidewalk yelling that he had been told to get off the grass. By this time, Williams was off the grass and stated to Alb that there were no signs telling him not to go on the grass. Williams pointed out non-minorities walking on the grass to Alb. Williams continued to talk on his phone, and Alb moved on the grass behind him, pushing Williams' back with his forearm and getting into his "private space."

Alb and Stopper testified that once Williams was asked to leave the grassy area he became aggressive and invaded Alb's personal space. Williams completed his call and asked Alb what was going on. Williams then asked Alb to move and started to walk away. Alb and Stopper jumped in front of him. Williams asked them both to move, but they continued to block his path. Williams suggested that they call the police, and Stopper and Alb agreed. They asked Williams to go with them, but when he refused, they advised him that he was being removed from the game. Alb and Stopper began hitting and shoving Williams with their closed fists and flashlights in his back, stomach, and side. This lasted fifteen to twenty minutes. Williams testfied that while the defendants were assaulting him, they also verbally taunted him saying, "What wrong, what are you going to do now boy". Once Williams stopped trying to leave, the defendants stopped pushing him.

Stopper went to get the police. When Williams attempted to leave again, Alb stopped him with his forearm. Stopper returned with the police, who then escorted Williams off the premises. After the incident, Williams experienced pain in his side. He was seen for a fractured

rib, abdominal bruising, shallow breathing, and lower back pain the next day at Community Hospital.

At the time of the incident, Alb was employed by the School Town of Munster as a teacher, and Stopper was an employee in student services. Both were responsible for supervising the spectators on the night of the incident. As part of their duties, they were responsible for ensuring that the spectators did not go on the newly planted grass and that no one went under the bleachers. Neither received any training prior to being a supervisor for the Munster home football games.

Williams filed a Tort Claim Notice on February 15, 2011. Because he did not receive the relief he desired, he filed a complaint on June 6, 2012. Williams alleges that he has been denied the right to liberty in violation of the Fourteenth Amendment of the United States Constitution and Article I, §1 of the Indiana Constitution, that the defendants used excessive force to remove him from the grassy area in violation of the Fourth Amendment of the United States Constitution and Article I, § 11 of the State of Indiana Constitution, and that his removal constituted assault under Indiana law. The defendants now move for summary judgment on all of Williams' claims.

*Discussion*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 106 S. Ct. 2548 , 91 L. Ed. 2d 265 (1986); ***Kidwell v. Eisenhauer,*** 679 F.3d 957, 964 (7th Cir. 2012); ***Stephens v. Erickson****,* 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a

genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Company***, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed.2d 142, 155 (1970); ***Stephens***, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Stephens***, 569 F.3d at 786; ***Wheeler v. Lawson***, 539 F.3d 629, 634 (7th Cir. 2008). However, summary judgment may be entered against the non-moving party if it is unable to "establish the existence of an essential element to [the party's] case, and on which [that party] will bear the burden of proof at trial . . .". ***Kidwell***, 679 F.3d at 964 (citing *Benuzzi v. Bd. of Educ*., 647 F.3d 652, 662 (7th Cir. 2011) (quoting ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. ***Ashman v. Barrows***, 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. ***Wheeler***, 539 F.3d at 634 (citing ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986)).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there

4

> are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986).

*See also* **Reeves v. Sanderson Plumbing Prods., Inc**., 530 U.S. 133, 149-51, 120 S.Ct. 2097, 2109, 147 L. Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); *Celotex Corp*., 477 U.S. at 322-23, 106 S. Ct. at 2553; **Stephens**, 569 F.3d at 786; **Argyropoulos v. City of Alton**, 539 F.3d 724, 732 (7th Cir. 2008)(stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); **Springer v. Durflinger,** 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party). Title 42 U.S.C. § 1983 provides a "federal cause of action for the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States . . . ." **Livadas v. Bradshaw**, 512 U.S. 107, 132, 114 S.Ct. 2068, 2082, 129 L.Ed.2d 93 (1994). Section 1983 does not itself create substantive rights, but "it acts as an instrument for vindicating federal rights conferred elsewhere." **Spiegel v. Rabinovitz**, 121 F.3d 251, 254 (7th Cir. 1997). When analyzing a § 1983 claim, it is necessary to identify the specific constitutional right that was violated. **Spiegel**, 121 F.3d at 254. Then, the validity of the claim must be judged by reference to the specific constitutional standard that governs the right. **Graham v. Connor**, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).

Williams alleges that the defendants violated his Fourth Amendment right by applying excessive force and the Equal Protection Clause of the Fourteenth Amendment by discriminating against him based on his race. Once a violation is identified, the plaintiff must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988)*; Payton v. Rush–Presbyterian–St. Luke's Medical Center*, 184 F.3d 623, 628 (7th Cir.1999). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor. [S]tate employment is generally sufficient to render the defendant a state actor." *West*, 487 U.S. at 49–50, 108 S.Ct. at 2255 (internal quotations and citations omitted).

Additionally, it is well settled that liability may not be imposed against a municipal entity under a theory of respondeat superior. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 509 (7th Cir.1993) (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993)); *Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir.1993). Rather, a municipal entity is liable

> when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.
>
> *Cornfield by Lewis v. Consolidated High School District No. 230*, 991 F.2d 1316, 1324 (7th Cir.1993) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 684, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978)).

In other words, "a local governmental entity will be responsible for the unconstitutional acts of its employees only if those actions were taken pursuant to official policy or custom." *Eversole v.*

*Steele*, 59 F.3d 710, 715 (7th Cir. 1995). *See also* ***Sams v. City of Milwaukee, Wisconsin***, 117 F.3d 991, 994 (7th Cir. 1997). A suit against a public servant in his official capacity amounts to a claim against the organization itself, and must comply with the same requirements to impose liability. ***Soderbeck v. Burnett County, Wisconsin***, 821 F.2d 446, 449 (7th Cir. 1987).

"A plaintiff may demonstrate an official policy through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." ***Estate of Sims v. County of Bureau***, 506 F.3d 509, 515 (7th Cir. 2007). A plaintiff cannot claim municipal liability unless he can demonstrate that the enforcement of the policy was the "moving force" behind the constitutional violation. ***Cornfield by Lewis***, 991 F.2d at 1324. *See also* ***Oklahoma City v. Tuttle***, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality opinion) ("At the very least, there must be an affirmative link between the policy and the particular constitutional violation alleged.").

Here, Williams asserts that the School Town of Munster failed to train Stopper and Alb. Such inadequacies may be said to constitute a custom for which the city is responsible if "the need for more or different [procedures] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." ***Gibson v. City of Chicago***, 910 F.2d 1510, 1521 (7th Cir. 1990) (quoting ***City of Canton v. Harris***, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989)); ***Cornfield by Lewis***, 991 F.2d at 1327. "Where . . . a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the 'policy of inaction' is the

7

functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S. at 394-398, 109 S.Ct. at 1208. "A single isolated incident of wrongdoing by a non-policymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct." *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986); *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985) (omission may be "sufficiently egregious that plaintiff's injury alone suggest[s] an established policy").

The Supreme Court has addressed this issue on at least two occasions. In *Canton*, the Supreme Court explained that a municipality can be held liable for a failure to train where the failure amounts to a deliberate indifference. In *Connick v. Thompson*, --- U.S.---, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011), the Supreme Court interpreted *Canton* to leave open the possibility that a single incident could result in municipal liability when it was highly predictable that the municipality's failure to provide any training would result in a constitutional deprivation. The *Canton* court posed the hypothetical example that a city could be liable for failure to train absent a pattern of violations if it armed its police officers with firearms without providing training on the constitutional limits of deadly force. *Canton*, 489 U.S. at 390, n.10, 109 S.Ct. 1197 at 1205. The court explained that liability was warranted in situations such as this because of the frequency of situations where police officers could exert force and the predictability that officers lacking training might exceed the constitutional limits on the use of deadly force. *Connick*, 131 S.Ct. at 1361. However, the *Connick* court determined that the county could not be held liable for failing to train its attorneys on their obligations to turn over exculpatory evidence because the suggested training was nuanced.

Courts have interpreted *Canton* and *Connick* to hold municipalities liable when they have

8

failed to provide any training, so long as the matter on which they failed to train was not too nuanced. For example, in ***Thomas v. Cumberland County***, --- F.3d ---, 2014 WL 1395666 (3rd Cir. 2014), the defendant corrections officers did not receive any training in conflict de-escalation and intervention. Following an attack, an inmate brought an action against the county and corrections officers, alleging that the county failed to train the officers in these areas. The court explained that based on the frequency of fights and the volatile nature of a prison, the predictability that an officer who lacked training in de-escalating conflicts would violate an inmate's constitutional rights was great. ***Thomas***, 2014 WL 1395666 at *7.

Similarly, in ***Jimenez v. Hopkins***, 2014 WL 176578 (W.D. Ky. 2014), the plaintiff alleged that the county violated his rights under the Eighth, Tenth, and Fourteenth Amendment by acting with deliberate indifference to his medical needs. The plaintiff presented a single violation of federal rights, seeking to hold the county liable under a failure to train theory. The court explained that other than CPR and first-aid training, the county did not provide any training to its officers to look for or to be aware of symptoms of physical illness, how to recognize and respond to medical needs, how to document requests for medical care, or how to pass on medical concerns to jail nursing staff. ***Jimenez***, 2014 WL 176578 at *18. The court explained that this was a recurring situation with an obvious potential for a violation. ***Jimenez***, 2014 WL 176578 at *18.

The courts have considered the single incident violations on a spectrum between "the plainly obvious need to train armed officers 'in the constitutional limitations of deadly force' in *Canton* . . . and the lack of such an obvious need in *Connick* where prosecutors had a legal education and ethical obligations and the allegedly necessary training was nuanced." ***Thomas***, 2014 WL 1395666 at *7. The courts begin by looking at the likelihood that such an incident might occur.

9

Here, the need to train the individuals who served as supervisors at the football games perhaps was not as obvious as *Canton* because Alb and Stopper were not provided with weapons. However, the purpose of having supervisors was to ensure safety and to enforce the school's policies. There certainly was a strong likelihood that situations would arise during the course of providing security that would involve the discretionary task of determining how to break up an incident or enforce a policy. The predictability that an untrained supervisor could exceed the constitutional limitations on excessive force or enforce the policies in a discriminatory manner without training was great. This is not a situation like in *Connick* where the government actors had prior training that would have put them on notice of what was expected of them. Williams is not asserting that the school should have provided training in a nuanced area. Rather, he is alleging that the School Town of Munster failed to provide training on how to carry out the predominate tasks the defendants were asked to perform. For these reasons, the court finds that Williams has submitted sufficient evidence for a reasonable jury to conclude that the School Town of Munster's failure to provide any training on how to provide security and enforce its policies was the result of its deliberate indifference to the constitutional rights of the attendees.

The defendants also argue that Williams cannot prove that Alb and Stopper applied excessive force in violation of the Fourth Amendment. The use of force is gauged according to a Fourth Amendment reasonableness standard. ***Graham v. Connor***, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); ***Holmes v. Village of Hoffman Estates***, 511 F.3d 673 (7th Cir. 2007); ***Estate of Phillips v. City of Milwaukee***, 123 F.3d 586, 592 (7th Cir. 1997). This analysis looks to the totality of the circumstances, assessing whether the force used was excessive in light of the severity of the plaintiff's actions, whether the plaintiff posed a threat to the safety of the officers or

to other persons, and whether the plaintiff was resisting the officers or attempting to flee. *Graham*, 490 U .S. at 396, 109 S.Ct. at 1872; *Holmes*, 511 F.3d at 673. *See also* *Fidler v. City of Indianapolis*, 428 F.Supp.2d 857, 862 (S.D.Ind. 2006). The measure of reasonableness is made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and pays "careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. The court must ask whether the officer "used greater force than was necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003). In determining reasonableness, the court must account for the fact that police officers often have to make split – second decisions in tense situations. For this reason, not every push or shove violates the Fourth Amendment. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872.

The defendants argue that Stopper and Alb's actions were reasonable because Williams was acting aggressively and that the defendants "simply attempted to move him off the grass." (Dft.'s Br. p. 11) However, the facts do not support only the defendants' description of the events. Williams' testified that after he moved from the grass, Alb continued to push him from behind. Williams later wanted to leave, but Alb and Stopper got in his way and would not allow him to leave. This is what led to Alb and Stopper hitting him in the ribs. If Alb and Stopper simply were trying to get Williams off the grass, they would not have continued to push him after he moved and would not have impeded his ability to leave. The defendants argue that Williams became hostile and that such actions were necessary. However, the true course of events and reasonableness of the defendants' actions should be determined by a jury. At this stage, the evidence shows that Williams has a plausible claim for excessive force against the defendants. Accordingly, the defendants' motion is **DENIED** with respect to this claim.

Williams also alleges that the defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment by intentionally discriminating against him on the basis of race. The Equal Protection Clause of the Fourteenth Amendment states that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. It is firmly established that "[a] plaintiff alleging an Equal Protection violation under §1983 must establish that he has been the victim of intentional discrimination . . . ." ***Harper v. Madison Metropolitan School District***, 110 Fed. Appx. 684, 687 (7th Cir. 2004). It is not sufficient to show that race was a "substantial" or "motivating" factor. ***Mt. Healthy City Board of Education v. Doyle***, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); ***Village of Arlington Heights v. Metropolitan Housing Development Corp***., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Rather, the plaintiff must show "but for" his race he would not have experienced the discriminatory action.

The defendants argue that summary judgment is appropriate on this claim because Williams has no evidence that similarly situated non-minorities were treated more favorably or that the defendants took the actions because of his race. Williams testified that other non-minorities were on the grass and that he pointed out these individuals to the defendants. However, the defendants did not yell at the non-minorities to get off the lawn or use force against them. He also explained that the defendants made at least one disparaging racial insult during the course of events that gave rise to his actions. This evidence tends to show that the defendants acted with the intent to discriminate. Whether the defendants actions were in fact intentional is better reserved for the jury to determine. At this stage, Williams has presented sufficient evidence to show that the defendants may have acted with a discriminatory intent.

The defendants also move for summary judgment on Williams' claims under Article I, § 1

and Article I, § 11 of the Indiana Constitution. Article I, § 1 of the Indiana Constitution provides that "all people are created equal; that they are endowed by their CREATOR with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness; that all power is inherent in the People; and that all free governments are, and of right ought to be, founded on their authority, and instituted for their peace, safety, and well-being. For the advancement of these ends, the People have, at all times, an indefeasible right to alter and reform their government." Indiana does not have a provision comparable to 42 U.S.C. § 1983 that creates an explicit civil remedy for constitutional violations by individual officers or governmental entities. *See Cantrell v. Morris*, 849 N.E.2d 488, 493 (Ind. 2006) ("Indiana, however, has no statutory provision comparable to 42 U.S.C. section 1983 creating an explicit civil remedy for constitutional violations by either individual officers or governmental entities."). However, the courts will recognize a civil remedy where it is clear that the legislature intended to create such a remedy. *See Cantrell*, 849 N.E.2d at 497-498.

It does not appear that Article 1, § 1 creates a civil remedy, and Williams has not argued that it does, particularly under this set of facts. *See Morrison*, 821 N.E.2d 15, 31-32 (Ind. App. 2005) (considering whether Article 1, § 1 is capable of independent judicial enforcement). In *Doe v. O'Connor*, 790 N.E.2d 985, 991 (Ind. 2003), the Indiana Supreme Court considered this issue by analyzing provisions similar to Article 1, § 1 in other state constitutions and explained that such provisions generally have not been interpreted to embody enforceable rights. Indiana Supreme Court cases dating back more than fifty years used Article 1, § 1 to invalidate statutes that impinge on individuals' economic rights, but the court has not employed this provision since. *See Morrison*, 821 N.E.2d at 31-32. Nor has Williams pointed to any cases where Article 1, § 1 ever was used to provide redress for depriving an African American of liberty as he sets forth in his complaint.

13

Williams also claims that his rights were violated under Article I, § 11. Article I, § 11, addresses injuries caused during an unreasonable seizure. *See e.g.* **Fidler v. City of Indianapolis**, 428 F.Supp.2d 857, 865 (S.D. Ind. 2006) (considering claim for unreasonable seizure under Article I, § 11). However, the Indiana Constitution does not provide an implied right to sue for damages under this provision. *See* **Fidler**, 428 F.Supp.2d at 865; **McConnell v. McKillip**, 573 F.Supp.2d 1090, 1103 (S.D. Ind. 2008)(explaining that there is no implied right of action for damages under the Indiana Constitution for damages arising from arrest). This is fatal to Williams claims under the Indiana Constitution.

Williams finally alleges that he is entitled to recover for assault. The defendants first argue that Williams cannot recover because there is no evidence that Alb or Stopper acted with the intent to cause Williams imminent apprehension of a harmful or offensive contact. An assault occurs "when one acts intending to cause harmful or offensive contact with the person of the other or an imminent apprehension of such contact." **Rivera ex rel. Rivera v. City of Nappanee**, 704 N.E.2d 131, 133 (Ind. App. 1998) (citing **Cullison v. Medley**, 570 N.E.2d 27, 30 (Ind. 1991)). The defendants attempt to distinguish an assault from a battery, claiming that although Williams allegedly suffered injuries as a result of Alb and Stopper's conduct, there is no evidence of apprehension preceding the battery. The defendants are mistaken. "Every battery necessarily involves an assault." **McGlone v. Hauger**, 104 N.E. 116, 120 (Ind. App. 1914). "Any act of such a nature as to excite an apprehension of a battery may constitute an assault. It is an assault to shake a fist under another's nose, to aim or strike at him with a weapon, or to hold it in a threatening position, to rise or advance to strike another, to surround him with a display of force . . . ." **W. Prosser & J. Keaton, Prosser and Keaton on Torts § 10 (5th ed. 1984).** Certainly, the defendants

assaulted Williams when they raised their hands or flashlights to hit Williams under Williams' account of the events.

The Indiana Torts Claim Act governs torts committed by government employees acting within the scope of their employment. *City of Bloomington Utilities Dept. v. Walker,* 904 N.E.2d 346, 349 (Ind. App. 2008). "Pursuant to the ITCA, 'governmental entities can be subjected to liability for tortious conduct unless the conduct is within an immunity granted by Section 3 of [the] ITCA.' " *Walker*, 904 N.E.2d at 349 (quoting *Brown v. Alexander*, 876 N.E.2d 376, 380 (Ind. App. 2007)). The party asserting the immunity bears the burden of establishing that it applies. *Walker*, 904 N.E.2d at 349.

The defendants assert that they are entitled to immunity from Williams' assault claim under Ind. Code § 34–13–3–5(c). This subsection provides that a lawsuit against a government employee personally must allege that the act that caused the loss is criminal, outside the scope of the employee's employment, malicious, or willful and wanton. Although this subsection, if applicable, would provide immunity to Alb and Stopper personally, it does not provide immunity for Williams' official claims against them or his claims against the School Town of Munster. Rather, Ind. Code § 34–13–3–3(7)-(8) provides immunity for the government entity or employee acting within the scope of his employment who is engaged in the enforcement of a school policy. However, the defendants did not raise this subsection to show that they are entitled to immunity, have waived their right to do so, and have not satisfied their burden. *See Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) (waive argument if not addressed); *Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir. 2003) (same); *Laborers' Intern. Union of North America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (same); *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998)

15

(same). The School Town of Munster and Alb and Stopper in their official capacity do not have immunity under Ind. Code § 34-13-3-5(c).

Immunity from personal liability under Ind. § 34-13-3-5(c) can be overcome upon a showing that the government employee's actions were outside the scope of employment, criminal, or willful and wanton. Williams alleged that the assault was a tortious act in violation of the law of Indiana. "Indiana Courts have made clear that the ITCA goes so far as to protect officers from liability for both tortious and even criminal acts where the purpose of the employee's conduct was to further the employer's business." *McConnell v. McKillip*, 573 F.Supp.2d 1090, 1103 (S.D. Ind. 2008) (citing *City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind. App. 1999)). Because Williams does not dispute that the defendants were acting within the scope of their employment at the time of the incident, "the only possible state law claims that [Williams] would have would be false arrest, false imprisonment, or excessive force." *McConnell*, 573 F.Supp.2d at 1103. Therefore, Stopper and Alb cannot be held personally liable for Williams' assault claim.

Based on the foregoing reasons, the defendants' Motion for Summary Judgment [DE 17] is **GRANTED IN PART** and **DENIED IN PART**.

ENTERED this 6th day of May, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge